**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

TYRA INGRID HALL,     &ast;
          &ast;
  Plaintiff,    &ast;
          &ast;
vs.        &ast; Civil Action No. 12-00389-B
          &ast;
CAROLYN W. COLVIN,[1]  &ast;
Commissioner of Social Security, &ast;
          &ast;
  Defendant.   &ast;

<u>ORDER</u>

Plaintiff Tyra Ingrid Hall (hereinafter "Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* On April 11, 2013, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 23). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties,

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), <u>Federal Rules of Civil Procedure</u>, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.

it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED**.

## I.   <u>Procedural History</u>

Plaintiff filed an application for supplemental security income benefits on May 15, 2009, and alleged that her disability commenced on June 1, 2005. (Tr. 194).  Plaintiff's application was denied on August 10, 2009, and she timely filed a Request for Hearing on August 19, 2009. (<u>Id.</u> at 15).  Plaintiff and her attorney, Colin E. Kemmerly, attended an administrative hearing on August 13, 2010 before Administrative Law Judge Katie H. Pierce (hereinafter "ALJ"). (<u>Id.</u> at 26-52).  A Vocational Expert (hereinafter "VE") also attended the hearing and provided testimony. (<u>Id.</u> at 40-50).  At the conclusion of the hearing, it was decided that the Agency would send Plaintiff for a consultative neurological exam and a psychological exam in order to determine Plaintiff's IQ. (<u>Id.</u> at 51-52).  Subsequent thereto, a supplemental administrative hearing was held on January 18, 2011.  Plaintiff, her attorney, and a VE attended the supplemental administrative hearing. (<u>Id.</u> at 53-65).  On January 25, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (<u>Id.</u> at 15-25).  Plaintiff sought review before the Appeals Council.  The Appeals Council denied plaintiff's request for review on May 4, 2012; thus, the ALJ's decision dated January 25, 2011 became the final decision

of the Commissioner. (Id. at 1-3).  Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1).  The parties waived oral argument (Docs. 22, 24) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   **Issues on Appeal**

**A.   Whether substantial evidence supports the ALJ's RFC assessment?**

**B.   Whether the ALJ erred by determining that Plaintiff is not disabled under Listing 12.05(c)?**

## III.  **Factual Background**

Plaintiff was born on June 20, 1982, and was 28 years of age at the time of the supplemental administrative hearing. (Tr. 57).  Plaintiff completed the eleventh grade education in regular (non-special education) classes, and took GED classes, but has not obtained her GED. (Id. at 58, 84-85).  Plaintiff has past relevant work as a housekeeper/cleaner, telemarketer, and office clerk. (Id. at 33, 221).

At the first administrative hearing, Plaintiff testified that she last worked as a housekeeper for two weeks in May of 2005. (Id. at 33).  Plaintiff contends that she is unable to work on due to her diabetes, arthritis, and "gastro" that "bothers with [her] acid reflux". (Id. at 34-36).  According to

3

Plaintiff, her diabetes has caused damage to her left nerves, which in turn causes her feet to swell and inhibits her ability to walk for long periods. (Id.). Plaintiff also testified that "[p]eople get on [her] nerves a little quicker" than they did prior to her medical problems. (Id. at 35). Plaintiff further testified that she has arthritis in her right middle finger. (Id. at 36). In addition, Plaintiff testified that she suffers from acid reflux, which causes her to vomit "at least once a month" (id.), and that the reflux "comes and goes" when she eats food that she "can't digest." (Id. at 37).

With respect to her daily activities, Plaintiff testified that she is able to watch television for 15 – 20 minutes before needing to lie down due to her back pains and neuropathy. (Id.). She further testified that she is able to drive a car and shop at Wal-Mart for about an hour. (Id. at 38). Plaintiff's leisure activities include babysitting her 9-month old niece, watching the History Channel, and spending time with friends who visit her. (Id. at 38-39). In addition, Plaintiff indicated on her function report that she dresses herself, makes breakfast, makes her bed, cleans her room, irons her clothes, washes clothes, and handles her finances. (Id. at 242-245).

IV. **Analysis**

    A.   **Standard of Review**

In reviewing claims brought under the Act, this Court's

role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Id.; Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

   B.   **Discussion**

---

   [2] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.[3] 20 C.F.R. §§ 404.1520, 416.920.

---

[3] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 15, 2009, and that she has the severe impairments of diabetes mellitus with neuropathy, arthritis of the right middle finger, history of gastroparesis, depression, and borderline intellectual functioning. (Tr. 17). The ALJ also found that Plaintiff does not have an impairment or combination of impairments that meet or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 18).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform light work, but that her ability to perform that level of work has been impeded by additional limitations. (Id. at 20, 24). The ALJ specifically found that Plaintiff can sit for four hours at a time and a total of five hours in an eight-hour workday, that she can stand for one hour at a time and a total of two hours in an eight-hour workday, that she can walk for one hour at a time and a total of one hour during an eight-hour workday, that she can frequently carry up to twenty pounds and occasionally carry up to fifty pounds, that she can frequently lift up to fifty

---

to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999); see also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

pounds, that she can frequently reach, handle, finger and feel with her right hand, that she can continuously reach, handle and finger and feel with her left hand, and that she can occasionally push and pull with her right hand. (Id.).  The ALJ also concluded that Plaintiff can operate foot controls, that she can frequently climb stairs and ramps and operate a motor vehicle, that she can occasionally climb ladders or scaffolds, and that she can balance, stoop, kneel, crouch and crawl. (Id.). The ALJ further concluded that Plaintiff can occasionally tolerate exposure to unprotected heights, moving mechanical parts, humidity and wetness, dust, odors, fumes and pulmonary irritants, extreme heat and cold, and vibrations and loud noise. (Id.).  She further concluded that Plaintiff can frequently understand, remember and carry out simple instructions, that she can occasionally understand, remember and carry out complex instructions, that she can occasionally tolerate interactions with the public, supervisors and co-workers, and that she can occasionally tolerate changes in a routine work setting. (Id.). Finally, the ALJ found that Plaintiff is unable to make judgments on complex work-related decisions. (Id.).

The ALJ then determined that Plaintiff has no past relevant work and concluded, based on her RFC and the testimony of the VE, that Plaintiff can perform "the requirements of representative occupations such as [a] bench assembler . . . and

[an] order clerk…" (Id. at 24).  Thus, the ALJ concluded that
Plaintiff is not disabled. (Id. at 25).

### 1. **Medical Evidence**

The relevant medical evidence of record reflects that on
January 2, 2007, Plaintiff presented to the emergency room at
University of South Alabama Medical Center (hereinafter "South
Alabama") and reported a right middle finger infection. (Id. at
343).  An x-ray exam showed an erosion of Plaintiff's PIP joint.
(Id. at 342).  Dr. Frederick Meyer performed an arthrotomy of
the proximal interphalangeal joint of Plaintiff's right middle
finger with irrigation and debridement. (Id. at 347).  Dr. Meyer
noted that Plaintiff reported injuring her finger in December
2006 and that "[s]he ha[d] basically been sitting on this for
approximately a month." (Id.).  Plaintiff's wound was drained
two days later, and Dr. Meyer noted that "[t]here were no
complications." (Id. at 345).   Plaintiff was instructed to
follow up at the Stanton Road Orthopedics Wound Care Center for
outpatient care. (Id. at 342).

On March 31, 2007, Plaintiff presented to the emergency
room at South Alabama with complaints of abdominal pain. (Id. at
313).  Two radiographs of her abdomen revealed a 2.5 x 3 cm soft
tissue round opacity in the left mid abdomen, air in the region
of her rectum, and calcification lateral to her superior left
hip joint. (Id. at 314).  There was no evidence of abnormal

9

enlargement of the area. (Id.). Plaintiff was prescribed Mirilax and instructed to stop taking Lortab and other medications that cause her to become constipated. (Id.).

On June 27, 2007, Plaintiff presented to the emergency room at South Alabama and was diagnosed with lower extremity cellulitis associated with diabetes, diabetes mellitus type 1[4], constipation, and marijuana abuse. (Id. at 332-333). An MRI of Plaintiff's right leg and ankle revealed a subcutaneous lesion with no discrete abscess collection, excessive accumulation of serous fluids with engorgement of the peripheral venous system, and no evidence of osteomyelitis. (Id. at 339). Plaintiff was treated with medications, including insulin, and discharged on June 29, 2007. (Id. at 334). Upon discharge, Plaintiff was listed as "stable" and her prognosis was "good". (Id.). Plaintiff was instructed to follow the American Diabetes Association 2000 calorie diet, to engage in 30-45 minutes of daily exercise, and to monitor her diabetes twice a day using insulin and glucose, if needed. (Id.). The records reflect that six months later, in December 2007, Plaintiff received wound care treatment at South Alabama. (Id. at 300, 304-306).

On July 29, 2008, Plaintiff presented to the emergency room

---

[4] While South Alabama's June 27, 2013, records indicate that Plaintiff suffers from Type I diabetes several other records indicate that Plaintiff suffers from Type II diabetes. (See, e.g., Tr. at 419, 439, 442).

at South Alabama and reported left hand and arm pain, including tingling, headaches, and dizziness. (Id. at 295). Plaintiff was diagnosed with costochondritis [5], proscribed over the counter Aleve for pain, and discharged. (Id. at 288, 294). Plaintiff's next visit to South Alabama ER was August 21, 2008. (Id. at 292). During that visit, Plaintiff reported nausea, vomiting and leaky bowels. An AP view of her abdomen revealed no evidence of abnormal calcification or enlargement. (Id.). Plaintiff was treated with nausea medication and discharged. (Id. at 290). A few days later, on August 28, 2008, Plaintiff returned to South Alabama ER and reported swelling in her left arm. (Id. at 285, 287). She was treated with medications and instructed to follow up with the Mobile County Board of Health. (Id.).

Treatment records from the Mobile County Health Department reflect that on August 5, 2008, Plaintiff was counseled regarding her diet, exercise, and lifestyle modifications associated with her diabetes. (Id. at 362). The treatment notes from August 18, 2008 reflect that Plaintiff's glucose and hemoglobin were high and her diabetes mellitus was "poorly controlled". (Id. at 356-59). Plaintiff was again counseled on

---

[5] Costochondritis is an inflammation of a rib or the cartilage connecting a rib. It is a common cause of chest pain. http://www.nlm.nih.gov/medlineplus/ency/article/000164.htm (Last visited: August 14, 2013).

diet, exercise, and lifestyle modifications to improve her health. (Id. at 359).

Plaintiff returned to South Alabama ER on October 15, 2008, and was diagnosed with acute pyelonephritis and a urinary tract infection. (Id. at 398). Plaintiff was treated with medications, instructed to follow the ADA diet, and discharged in good condition. (Id. at 399).

The record reflects that from December 1, 2008 to December 6, 2010, Plaintiff also sought treatment at Stanton Road Clinic for her diabetes. Plaintiff was consistently counseled on the importance of controlling her diet and instructed to stop "drinking lots of juices." (Id. at 375, 376, 377, 379, 417, 420). The treatment notes reflect that during Plaintiff's November 4, 2009 visit to the Stanton Road Clinic, her neuropathy and blood pressure were elevated and she admitted to using cocaine the night before. (Id. at 418). Plaintiff was next seen at the clinic on July 14, 2010. During that visit, Plaintiff reported that her Amitriptyline[6] was not working. (Id. at 437). She was diagnosed with neuropathy, polydipsia, polyuria, and gastroparesis, and was proscribed a higher dosage

---

[6] Amitriptyline is used to treat symptoms of depression. Amitriptyline is in a class of medications called tricyclic antidepressants. It works by increasing the amounts of certain natural substances in the brain that are needed to maintain mental balance.
http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682388.html
(Last Visited: August 15, 2013).

of Amitriptyline, for depression, Neurotin, for pain, and fiber and stool softener, for her constipation. (Id. at 438).

Plaintiff returned to the South Alabama ER on November 29, 2009, and reported pain. (Id. at 391). A radiograph of her abdomen was taken and compared to the August 21, 2008 radiograph. (Id. at 394). The radiograph revealed that there was a large amount of stool within her colon but that, otherwise, everything was largely normal as there was no evidence of acute abdominal pathology. (Id.). Plaintiff was instructed to follow up at the Stanton Road Clinic. (Id. at 393).

Following Plaintiff's first administrative hearing in August of 2010, the ALJ referred her to Dr. Jack C. Carney, Ph.D., on September 9, 2010, for a consultative psychological examination and Medical Source Statement (hereinafter "MMS"). (Id. at 52, 452-54). Plaintiff reported to Dr. Carney that she completed the eleventh grade in regular classes, not special education classes, and that she did so without repeating any grades. (Id. at 455). Dr. Carney administered the Wechsler Adult Intelligence Scale Test (WAIS IV), and found that Plaintiff's full-scale IQ score was 72, her verbal comprehension score was 70, her perceptual reasoning score was 71, her working memory score was 83 and her processing speed score was 86. (Id.). Dr. Carney diagnosed Plaintiff with borderline

intellectual functioning, which he opined is a chronic condition, and depression not otherwise specified.  He opined that Plaintiff should respond favorably to treatment within 6-12 months.  (Id.).

Dr. Carney opined that Plaintiff is mildly restricted with respect to her ability to understand, remember and carry out simple instructions, that she is moderately restricted in her ability to make judgments on simple work decisions and her ability to understand, remember and carry out complex instructions, and that she is markedly limited in her ability to make judgments on complex work decisions.  (Id. at 452).  He also opined that Plaintiff is moderately limited in her ability to interact appropriately with the public, supervisors, and co-workers, and in her ability to respond appropriately to usual work situations and changes in the work routine.  (Id. at 453).

On September 17, 2010, Dr. Ilyas A. Shaikh, M.D. conducted a consultative neurological examination and MMS at the request of the Agency.  (Id. at 51-52, 442).  Dr. Shaikh noted that Plaintiff had no balance problems and no problems walking but she was mildly compromised standing on her heels and toes.  (Id. at 443-44).  He found that she was able to move all four extremities and her motor skills were largely normal except that she was unable to flex her right middle finger.  (Id.).  In addition, he noted that Plaintiff was able to make a fist, turn

a doorknob and tie her shoelaces, and her grip strength was 5/5 on the left and 4+/5 on the right. (Id. at 444). Dr. Shaikh observed that Plaintiff was experiencing no bowel or bladder incontinence and that she had a one-inch erythematic rash that was "probably [a] healed ulceration." (Id. at 443). Dr. Shaikh's impression was diabetes mellitus type II, fatigue and headaches that were probably migraine in nature. (Id.). He also noted that Plaintiff has mildly compromised right grip strength. (Id.).

Dr. Shiakh completed the MMS wherein he opined that Plaintiff is able to frequently lift up to twenty - fifty pounds, occasionally lift up to one hundred pounds, frequently carry up to twenty pounds and occasionally carry up to fifty pounds. (Id. at 446). He further opined that, in an eight-hour workday, Plaintiff is able to sit a total of five hours, stand a total of two hours and walk a total of one hour. (Id. at 447). With respect to Plaintiff's motor skills, he opined that Plaintiff is frequently able to climb stairs and ramps and that she is occasionally able to balance, stoop, kneel, crouch, climb ladders, and crawl. (Id. at 449). Dr. Shaikh further found that Plaintiff has no complete environmental limitations. (Id. at 449).

2.  <u>**Issues**</u>

   A. **Whether substantial evidence supports the ALJ's RFC assessment?**

In her brief, Plaintiff argues that the ALJ erred in finding that she has the residual functional capacity (hereinafter "RFC") to perform a range of light work. (Doc. 13 at 2).  Plaintiff maintains that the ALJ "failed to cite any evidence from acceptable medical sources to support her own medical opinion and resulting [RFC] determination." (<u>Id.</u>). Plaintiff also asserts that Dr. Shaikh opined that Plaintiff cannot perform a full range of sedentary work. (<u>Id.</u>). Additionally, Plaintiff argues that the VE "testified that for all practical purposes, Dr. Shaikh's opinions eliminated light work." (<u>Id.</u>).

Turning first to Plaintiff's argument that Dr. Shaikh opined that Plaintiff is unable to perform a full range of sedentary work, the record does not support Plaintiff's assertion.  As noted *infra*, after examining Plaintiff, Dr. Shaikh prepared a MMS, which contains his opinions regarding Plaintiff's physical functional limitations.  The lifting and carrying restrictions listed by Dr. Shaikh are actually more akin to light and medium work rather than sedentary work.  In addition, Dr. Shaikh opined that, in an eight-hour workday, Plaintiff is able to sit a total of five hours, stand a total of

two hours and walk a total of one hour. (Id. at 447).  The ALJ
accorded Dr. Shaikh's opinions great weight, and the physical
functional limitations contained in the RFC, as determined by
the ALJ, closely resemble those contained in Dr. Shaikh's MMS.
(Id. at 23).  Accordingly, the ALJ did not err in developing
Plaintiff's RFC as it is supported by substantial evidence[7]

Secondly, while Plaintiff's RFC contains a five hour
sitting limitation, and sedentary work generally requires the
ability to sit for six hours, the ALJ properly utilized a VE in
order to determine if there exists jobs that Plaintiff could
perform given that some of her functional limitations, such as
lifting and carrying, are consistent with light to medium work,
but her walking and standing limitations are more consistent
with sedentary work.  Indeed, the regulations define light work
as lifting no more than twenty pounds at a time with frequent
lifting or carrying of objects weighing up to ten pounds.  Even
though the weight lifted in a particular light job may be very
little, a job is in this category when it requires a good deal
of walking or standing. SSR 83-10, 1983 SSR LEXIS 30.  Whereas,
SSR 96-9p, 1996 SSR LEXIS 6 at *17 (S.S.A July 2, 1996) provides
that in order to perform a full range of sedentary work, an

---

[7] Plaintiff has not objected to the functional limitations as
determined by Dr. Shiakh and there is no medical evidence in the
record that provides a basis for questioning the opinions
contained in the MMS prepared by Dr. Shiakh's.

individual should generally be able to remain in a seated position for approximately six hours out of an eight-hour workday. If an individual is not functionally capable of doing the prolonged sitting contemplated in the definition of sedentary work, or the standing and walking required for light work, the full range of work will be eroded. Yet, the fact that the occupational base is eroded does not necessitate a finding of disability if there exists a significant number of jobs a claimant can perform despite his or her limitations. 1996 SSR LEXIS 6 at *13.

In such a situation, a VE is brought in to testify as to whether a significant number of jobs exist in the national economy that a hypothetical individual with the claimant's limitations can perform. See Watson v. Astrue, 376 F. App'x 953, 956-57 (11th Cir. 2010); SSR 83-12, 1983 SSR LEXIS 32 ("Where the extent of the occupational base is not clear, the adjudicator will need to consult a vocational resource."). This is precisely what happened in this case. The ALJ found as follows:

> The undersigned nonetheless acknowledges that the claimant's diabetes and associated neuropathy may reasonably affect the claimant's ability to sit, stand, walk and perform certain activities. Consequently, the undersigned has limited the claimant to less than the full range of light work as set forth in the residual functional finding. . .

> If the claimant had the residual functional
> capacity to perform the full range of light work, a
> finding of "not disabled" would be directed by
> Medical-Vocational Rule 202.17. However, the
> claimant's ability to perform all or substantially
> all of the requirements of this level of work has
> been impeded by additional limitations. To
> determine the extent to which these limitations
> erode the unskilled light occupational base, the
> Administrative Law Judge asked the vocational
> expert if jobs exist in the national economy for an
> individual with the claimant's age, education, work
> experience and residual functional capacity. The
> vocational expert testified that given all of these
> factors, the individual would be able to perform
> the requirements of representative occupations such
> as bench assembler, DOT bench assembler, DOT Code
> 713.687-018 (approximately 305,000 jobs in the
> national economy, 1,500 in Alabama) and order
> clerk, DOT Code 209.567-014 (approximately 685,000
> jobs in the national economy, 1,800 in Alabama).

(Id. at 22, 24).

By posing a hypothetical question to the VE that comprised all of Plaintiff's limitations that are supported by the record, the Court finds that the ALJ did not err in applying the correct legal standards, and that his determination that other jobs exist in substantial numbers which plaintiff can perform despite her limitations is supported by substantial evidence. See Orestano v. Comm'r of Soc. Sec., 252 Fed. App'x 962, 963-64 (11th Cir. 2007).

**B. Whether the ALJ erred by determining
that Plaintiff is not disabled under
Listing 12.05(c)?**

Plaintiff also argues that the ALJ erred in determining
that she is not disabled given her non-exertional intellectual
limitations.  Specifically, Plaintiff argues that her verbal IQ
score of 70 combined with her additional severe impairments
outlined by the ALJ meets or medically equals Listing 12.05(c).
(Doc. 13 at 8).  Plaintiff further asserts that her verbal IQ
score of 70 is a mental impairment that "is a lifelong condition
with deficits in adaptive functioning occurring before age 22."
(Id.).

The mental retardation Impairment Listing in § 12.05C
requires the claimant to demonstrate a "significant subaverage
general intellectual functioning with deficits in adaptive
functioning initially manifested during the development period;
i.e., the evidence demonstrates or supports onset of the
impairment before age 22," as well as a "valid verbal,
performance, or full scale IQ of 60 through 70 and a physical or
other mental impairment imposing an additional and significant
work-related limitation of function." §§ 12.00A, 12.05, 12.05C;
see also Grant v. Astrue, 255 Fed. App'x 374 (11th Cir. 2007).

In Hodges v. Barnhart, 276 F.3d 1265, 1266, 1268-69 (11th
Cir. 2001), the ALJ found that the claimant had a "severe"

impairment of "borderline intellectual functioning," along with other severe mental and physical impairments. Id., 276 F.3d at 1268. WAIS testing by a consultative examiner yielded a verbal IQ score of 67, a performance IQ score of 79, and a full-scale IQ score of 72. Id., 276 F.3d at 1267. he ALJ "adopt[ed] [the consultative examiner's] IQ testing as a valid assessment of Hodges' mental capabilities at age 49," but "found no evidence supported the proposition that Hodges manifested deficits in adaptive functioning before age twenty-two as required by Listing 12.05(c)." Id., 276 F.3d at 1268. Thus, the ALJ determined that Hodges did not meet the listing. Id. On appeal, the Eleventh Circuit held that "IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a claimant's] life"; thus, a claimant need not present evidence that she manifested deficits in adaptive functioning prior to the age twenty-two, when she has presented evidence of low IQ test results after the age of twenty-two. Id., 276 F.3d at 1266-67. The Eleventh Circuit remanded the case to allow the Commissioner to "present evidence of Hodge's daily life to rebut the presumption of mental impairment." Id., 276 F.3d at 1268-69.

    Later in Grant v. Astrue, *supra*, the ALJ found that the plaintiff had a valid IQ score of 69, and that she possessed a physical or mental impairment imposing an additional and

significant work-related limitation of function. Id.   However,
the ALJ nevertheless determined that the plaintiff did not meet
Listing 12.05(c) because she failed to demonstrate deficits in
more than one area of adaptive functioning before the age of 22.
Id., 255 Fed. App'x at 375.   On appeal, the Eleventh Circuit
held that the ALJ applied an improper legal standard and that
the plaintiff was entitled to the benefit of the rebuttable
presumption established in Hodges. Id.   In remanding the case,
the Eleventh Circuit observed that "[d]espite erroneously
placing the burden of proof on [the plaintiff], the ALJ
nonetheless devoted one sentence in his decision to finding the
presumption rebutted, but did not account for his decision's
internal inconsistencies or support this finding with any facts
or reasoning." Id.   The Court stressed that on remand, the ALJ
was to determine whether there was sufficient evidence to rebut
the presumption that the plaintiff manifested deficits in
adaptive functioning before the age of 22. Id.

     In this case, the ALJ considered Listing 12.05(c) and
determined that Plaintiff did not meet the listing.   In
making this finding, the ALJ found as follows:

          [T]he "parapgraph "C" criteria of listing 12.05 are
          not met because the claimant does not have a valid
          verbal, performance or full scale IQ of 60 through
          70 and a physical or mental impairment imposing an
          additional and significant work-related limitation
          of function.   The claimant's IQ scores are all at

70 or above.   In addition, Dr. Shaikh specially
diagnosed the claimant with borderline intellectual
functioning, not mental retardation.

(Tr. 20).

The ALJ's finding regarding Listing 12.05(c) does not comport with Hodges and Grant. As noted *supra*, the consultative examiner, Dr. Carney, administered the WAIS test to Plaintiff, and found that she obtained a full-scale IQ score of 72, a verbal comprehension score of 70, perceptual reasoning score of 71, working memory score of 83 and a processing speed score of 86. (Tr. 457).   In finding that Plaintiff does not meet Listing 12.05, the ALJ relied on the fact that Plaintiff's scores were at 70 or higher, and that Dr. Carney had diagnosed Plaintiff with borderline intellectual functioning, as opposed to mental retardation.

However, while WAIS testing may generate several IQ scores, the regulations require that the lowest of those scores be used in conjunction with Listing 12.05. 20 C.F.R. Pt. 404, Supt. P, App. 1, § 12.00(D)(6)(c) ("In cases where more than one IQ is customarily derived from the test administered . . ., we use the lowest of these in conjunction with 12.05"); Hodges, *supra*, at 1268 n.1.   In his decision, the ALJ accorded substantial weight to the opinions of Dr. Carney, including the IQ scoring results, and there is nothing in the ALJ's decision that suggests that he deemed Plaintiff's verbal score of 70 to be invalid.

Additionally, the ALJ found that Plaintiff has the severe impairments of diabetes mellitus with neuropathy, arthritis of the right middle finger, history of gastroparesis, depression, and borderline intellectual functioning. (Tr. 17). Plaintiff's verbal score of 70 and her severe physical or mental impairments triggered the rebuttable presumption Plaintiff manifested deficits in adaptive functioning prior to the age twenty-two. Because the ALJ did not determine whether there was sufficient evidence to rebut the presumption that the Plaintiff manifested deficits in adaptive functioning before the age of 22, this case must be remanded for the required analysis.

**V.    Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim be **REVERSED** and **REMANDED.**

**ORDERED** this **24th** day of **September, 2013.**

                    _____/s/ SONJA F. BIVINS_____
                    **UNITED STATES MAGISTRATE JUDGE**